**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4054-24

CLAIRE SMITH,

    Plaintiff-Respondent,

v.

KATHLEEN LOMBARDO,

    Defendant-Respondent,

and

AVI KATZ and 222 ARDMORE LLC,

    Defendants-Appellants.

_____

> Submitted May 28, 2026 – Decided July 6, 2026
>
> Before Judges Currier and Berdote Byrne.
>
> On appeal from the Superior Court of New Jersey, Chancery Division, Middlesex County, Docket No. C-000078-23.
>
> Gertner Murphy LLC, attorneys for appellants (Arthur H. Lang, on the briefs).

Hoagland Longo Moran Dunst & Doukas, attorneys for respondent Claire Smith (Joseph D. Palombit, of counsel and on the brief; Julia L. Pickett, on the brief).

PER CURIAM

Defendants Avi Katz and 222 Ardmore LLC appeal from a final order granting plaintiff Claire Smith's motion to enforce litigant's rights pursuant to Rule 1:10-3, which compelled enforcement of an oral settlement agreement. The underlying dispute concerns the ownership of a two-family residence in New Brunswick. The oral settlement agreement gave Smith the option to purchase defendants' interest in the property within specified time periods, and the parties agreed the terms would be reduced to a written agreement. The parties never executed a written agreement. Defendants contend Smith's option periods had already expired by the time she moved to enforce the agreement. We are not persuaded and affirm.

## I.

Claire Smith (Smith) resides at the New Brunswick property and is the administrator of the estate of her late husband, Charles L. Smith, who died intestate on March 21, 2020. In 2010, Smith and her husband executed a quitclaim deed transferring title to themselves and their daughter, Kathleen Lombardo, as tenants in common. Pursuant to the parties' arrangement,

Lombardo resided in one unit rent-free in exchange for paying property taxes and utilities, which she did during her occupancy.

After Charles Smith's death, Lombardo moved out. In May 2021, Lombardo entered into a contract to sell her purported half-interest in the property to Avi Katz for $35,000, representing herself as a fifty-percent owner; Katz agreed to continue paying taxes and utilities. Katz assigned his rights to 222 Ardmore LLC (Ardmore). A deed from Lombardo to Ardmore was recorded in October 2021. Following the transfer, Ardmore rented out the unit previously occupied by Lombardo. No rent was paid to Smith. Katz, Ardmore, and Lombardo failed to pay property taxes thereafter.

On June 9, 2023, Smith filed a complaint in the Chancery Division against Lombardo, Katz, and Ardmore. The complaint sought, among other relief, invalidation of the 2010 deed and subsequent transfer, a declaration of Smith's ownership interest, an accounting of rents, and an order for sale of the property.

On July 25, 2024, the parties participated in a settlement conference with the trial court. The terms, placed on the record, provide:

> So this is the basic terms of the agreement, this will be reduced into writing after we are finished here.
> Ms. Smith will pay to Mr. Katz $173,333 within four months. In the event that she can't secure funding to make that payment within four months, she has the option to pay Mr. Katz $190,000 within six months of

the effective date of the settlement agreement. If after six months Ms. Smith cannot make that payment, Mr. Katz has agreed to pay Ms. Smith $225,000 and Ms. Smith will retain a life estate in the property with Mr. Katz paying taxes and insurance with Ms. Smith being responsible for the remainder.

Once a settlement agreement is signed and executed, Mr. Katz will execute a deed to Ms. Smith and Ms. Smith will execute a deed to Mr. Katz at the same time, to be held by the attorneys, in the event that the deed is needed in order to secure funding.

The trial court found all parties had freely and voluntarily agreed to the settlement, and indicated that final dissolution would await execution of the written documents:

> I find that all parties have agreed to the terms freely and voluntarily and with the advice of counsel, they agree to be bound by the terms of the settlement and [will] incorporate those terms into a fully written agreement and agree that today they will dismiss their respective claims.
>
> So I will dismiss the case without prejudice. We'll wait, you know, anything further in terms of a final dissolution upon execution of the written documents.

On August 26, 2024, Smith circulated a draft of the written settlement agreement to all parties, including a provision permitting Smith to record the deed from Katz if her lender required title to be in her name as a precondition of loan closing. The provision read:

> If Smith obtains a financing commitment, and a condition of the financing is that title be in Smith's

A-4054-24

> name prior to the loan closing, counsel for Smith shall have permission to record the deed from Katz. If closing does not take place within the time period set forth herein, counsel for Katz shall have permission to file the deed from Smith.

The parties agree this term was not placed on the record as part of the settlement agreement. Katz told Smith she could not record the deed until the transaction was complete and payment had been made. Smith maintained she had received a financing commitment, but it was conditioned on the deed being recorded prior to closing. She stated the matter could not be resolved without this language.

Because the parties reached an impasse over this disputed provision, they requested a conference with the court. The trial court held a conference on November 15, 2024, where Smith agreed to remove the disputed language regarding pre-closing recording of the deed. On May 6, 2025, almost six months after the conference, Smith circulated a revised draft omitting the disputed language. Lombardo agreed, but Katz asserted the time for Smith's performance had expired.

On July 2, 2025, Smith moved to enforce litigant's rights pursuant to Rule 1:10-3, seeking an order compelling enforcement of the settlement agreement. Katz and Ardmore filed untimely opposition, which the trial court declined to consider. On July 18, 2025, the court granted Smith's motion, ordering that

Smith had four months from July 18, 2025 to pay Katz $173,333 for fee simple title; if not, she could pay $190,000 by December 31, 2025; if neither payment was made, Katz would pay Smith $225,000 for her interest, with Smith retaining a life estate and Katz remaining responsible for taxes and insurance. The order required the parties to comply with all other settlement terms as memorialized in the May 6, 2025 agreement, including executing the necessary quitclaims deed and holding them in escrow. Katz and Ardmore appealed from the order.

## II.

"We review a trial court's order enforcing litigant's rights pursuant to Rule 1:10-3 under an abuse of discretion standard." Wear v. Selective Ins. Co., 455 N.J. Super. 440, 458-59 (App. Div. 2018). A court abuses its discretion "'when a decision is made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Palmer v. Flagship Resort Dev. Corp., 481 N.J. Super. 465, 496 (App. Div. 2025) (quoting Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002)).

"Generally, a settlement agreement is governed by principles of contract law." Brundage v. Est. of Carambio, 195 N.J. 575, 600-01 (2008) (quoting Thompson v. City of Atl. City, 190 N.J. 359, 379 (2007)). "An agreement to settle a lawsuit is a contract which, like all contracts, may be freely entered into

and which a court, absent a demonstration of 'fraud or other compelling circumstances,' should honor and enforce as it does other contracts." Id. at 601 (quoting Pascarella v. Bruck, 190 N.J. Super. 118, 124-25 (App. Div. 1983)). "'[C]ourts should discern and implement the intentions of the parties[,]' and not 'rewrite or revise an agreement when the intent of the parties is clear.'" Capparelli v. Lopatin, 459 N.J. Super. 584, 604 (App. Div. 2019) (alteration in original) (quoting Quinn v. Quinn, 225 N.J. 34, 45 (2016)). "Thus, when the intent of the parties is plain and the language is clear and unambiguous, a court must enforce the agreement . . . ." Ibid. (quoting Quinn, 225 N.J. at 45). "We cannot 'rewrite a [settlement agreement] for the parties better than or different from the one they wrote for themselves.'" GMAC Mortg., LLC v. Willoughby, 230 N.J. 172, 186 (2017) (quoting Kieffer v. Best Buy, 205 N.J. 213, 223 (2011)).

A valid settlement agreement requires an offer and acceptance by the parties, "and the terms of the agreement must 'be sufficiently definite [so] "that the performance to be rendered by each party can be ascertained with reasonable certainty."'" GMAC Mortg., 230 N.J. at 185 (quoting Weichert Co. Realtors v. Ryan, 128 N.J. 427, 435 (1992)). There must be an "unqualified acceptance to conclude the manifestation of assent." Weichert, 128 N.J. at 435-36 (quoting

Johnson & Johnson v. Charmley Drug Co., 11 N.J. 526, 539 (1953)). "[I]f parties agree on essential terms and manifest an intention to be bound by those terms, they have created an enforceable contract." Id. at 435.

The record demonstrates the parties freely and voluntarily entered into the settlement agreement on July 25, 2024. Defendants contend the time for Smith to perform expired on January 25, 2025, six months after the terms were placed on the record. We disagree. The terms specifically provide that the time to perform runs from the "effective date of the settlement agreement," not from the date of the settlement conference. The effective date was understood to be the date of execution of the written agreement; counsel stated the terms "will be reduced into writing," and the deeds would be exchanged "once a settlement agreement is signed and executed." Furthermore, the circulated drafts of the written settlement agreement stated:

> The Effective Date of this Agreement shall be the date upon which all Parties have signed this Agreement. This Agreement shall be considered fully executed upon the final party signing this Agreement.

Defendants' assertion that "Smith's time [to perform] was up" by January 2025 is belied by the record.

Defendants' attempt to castigate Smith for failing to reduce the agreement to a writing is also unavailing. Although Smith circulated a draft of the

8

agreement containing a provision not previously placed on the record, she attempted to reduce the agreement to a writing, and the offending provision was later removed.  Defendants contend, after the provision was removed, Smith "did not provide another written agreement" and it was her "burden" to do so.  Notably, defendants do not point us to any authority to support this assertion that a greater burden would be placed on one party over the other to reduce a settlement agreement to a writing once the terms have been placed on the record.  Defendants' position is untenable:  they take issue with Smith having a year to buy the property at the 2024 price due to the delay in memorializing the terms, yet assert the delay was "fine with Katz," conceding he made no personal attempt to reduce the agreement to writing.

The plain language of the settlement terms provides that the time limitation for Smith to purchase the property begins to run from the "effective date of the settlement agreement," which is when the written agreement is executed.  The delay in getting the terms memorialized in writing does not render the agreement unenforceable.  See Harrington v. Harrington, 281 N.J. Super. 39, 46 (App. Div. 1995) ("'[W]here the parties agree upon the essential terms of a settlement, . . . the settlement will be enforced notwithstanding the fact that the writing does not materialize . . . .'" (quoting Lahue v. Pio Costa,

9

263 N.J. Super. 575, 596 (App. Div. 1993))). Accordingly, the trial court did not abuse its discretion in granting Smith's motion to enforce litigant's rights pursuant to Rule 1:10-3.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M. C. Hanley

Clerk of the Appellate Division

A-4054-24